Citation Nr: 1607915 
Decision Date: 02/29/16 Archive Date: 03/04/16

DOCKET NO. 08-34 074 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Detroit, Michigan


THE ISSUES

1. Entitlement to service connection for a right knee disorder, claimed as secondary to service-connected left knee localized nodular synovitis. 

2. Entitlement to service connection for a low back disorder, claimed as secondary to service-connected left knee localized nodular synovitis. 

3. Entitlement to a rating in excess of 10 percent for left knee localized nodular synovitis. 


REPRESENTATION

Veteran represented by: The American Legion


ATTORNEY FOR THE BOARD

N.K., Associate Counsel 
INTRODUCTION

The Veteran had active service from July 1985 to March 1986.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a rating decision issued in June 2007 by the Department of Veterans Affairs (VA) Regional Office (RO) in Detroit, Michigan. The Board remanded the case in October 2014 for additional development and it now returns for further appellate review.

In October 2014, the Board remanded this case to the Agency of Original Jurisdiction (AOJ) for additional development. The matter has properly been returned to the Board for appellate consideration. See Stegall v. West, 11 Vet. App. 268(1998).


FINDINGS OF FACT

1. The evidence of record does not show that the Veteran's right knee disability had its clinical onset in service, or is otherwise related to his active duty or caused or aggravated by a service connected disability.

2. The evidence of record does not show that the Veteran's low back disability had its clinical onset in service, or is otherwise related to his active duty or caused or aggravated by a service connected disability.

3. For the entire rating period on appeal, the Veteran's left knee has been manifested by chronic pain, but his range of motion has not been functionally limited to less than full extension or to flexion less than 120 degrees.

4. Left knee instability, ankylosis, and meniscal problems have not been objectively shown. 


CONCLUSIONS OF LAW

1. The criteria for service connection for a right knee disability, to include as secondary to the Veteran's left knee disability, have not been met. 38 U.S.C.A. §§ 1112, 1113, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 3.310 (2015).

2. The criteria for service connection for a low back disability, to include as secondary to the Veteran's left knee disability, have not been met. 38 U.S.C.A. §§ 1112, 1113, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 3.310 (2015).

3. The criteria for a rating in excess of 10 percent for a left knee disability have not been met. 38 U.S.C.A. §§ 1155, 5103(a), 5103A, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.2, 4.3, 4.6, 4.7, 4.40, 4.45, 4.59, 4.71a, DC 5010, 5256-5262 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). In this case, required notice was provided, and neither the Veteran, nor his representative, has either alleged, or demonstrated, any prejudice with regard to the content or timing of VA's notices or other development. See Shinseki v. Sanders, 129 U.S. 1696 (2009). Thus, adjudication of his claims at this time is warranted. 

VA also has a duty to assist the Veteran by making all reasonable efforts to help a claimant obtain evidence necessary to substantiate his claims. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c). Service treatment records and private treatment records have been associated with the record and the Veteran has not reported receiving any VA treatment or identified any evidence that has not otherwise been obtained. The Veteran and his representative have also provided statements and argument in support of his claims. VA examinations of the Veteran's knees and back were conducted in July 2006, March 2007 and March 2015. The examinations described the Veteran's disabilities in sufficient detail for the Board to make an informed decision both on the issue of service connection and on the issue of an increased rating. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Moreover, neither the Veteran nor his representative has objected to the adequacy of any of the examinations conducted during this appeal. See Sickels v. Shinseki, 643 F.3d, 1362, 1365-66 (Fed. Cir. 2011) (holding that although the Board is required to consider issues independently raised by the evidence of record, the Board is still "entitled to assume" the competency of a VA examiner and the adequacy of a VA opinion without "demonstrating why the medical examiners' reports were competent and sufficiently informed"). Additionally, the Board remanded to correct any deficiencies contained in earlier opinions.

Thus, after a careful review of the file, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). 

Of note, the Veteran was offered the opportunity to testify at a hearing before the Board, but declined to do so. 

The Board concludes that all the available records and medical evidence have been obtained in order to make adequate determinations as to this claim. Hence, no further notice or assistance is required to fulfill VA's duty to assist in the development of the claims. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd, 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).




Service Connection for a Right Knee and Back Disability, to Include as Secondary to a Left Knee Disability

In April 2006 the Veteran filed a claim for service connection, suggesting that he had a right knee disability and a low back disability as a result of his service connected left knee disability. 

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C.A. § 1131 (West 2014); 38 C.F.R. § 3.303(a)(2015). Under the relevant laws and regulations, service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1131 (West 2014). Generally, the evidence must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1166 -67 (Fed. Cir. 2004); Caluza v. Brown, 7 Vet. App. 498, 505 (1995).

For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. With chronic disease as such in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. If a condition noted during service is not shown to be chronic, then generally, a showing of continuity of symptoms after service is required for service connection. 38 C.F.R. § 3.303(b)(2015). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d)(2015).

Regarding the Veteran's possible presumptive service connection, there is no documented evidence of record indicating that he was diagnosed with arthritis of the right knee or back within a year of his separation from service. The Veteran was diagnosed with arthritic changes in his right knee and back in 2006, more than a decade after his discharge, and there is no immediate post service treatment or record of complaints about his claimed disabilities, which would indicate any continuity of symptoms. Therefore, presumptive service connection is not warranted.

There is also no suggestion that the Veteran developed either back or right knee problems as a direct result of service. Service treatment records do not reflect any complaints of a right knee or low back disability during service and there were no abnormal findings relating to such at his 1986 separation examination. Right knee and back disabilities were not diagnosed for approximately a decade after separation from service. In March 2015, a VA examiner noted that the Veteran had arthritis of the left knee and low back, but found that it was due to the natural aging process instead of service. She concluded that it was less likely than not that the Veteran's right knee and low back disabilities were related to his service. 

Therefore, as described, there is no competent evidence of record that establishes a causal relationship between the Veteran's currently diagnosed disabilities and his military service. 

However, as noted, the Veteran's main contention is that his right knee and back disabilities are secondarily related to his service connected left knee disability, rather than directly related to his military service. 

Service connection may be granted for disability which is proximately due to or the result of a service-connected disease or injury and secondary service connection may be found where a service-connected disability aggravates another condition (i.e., there is an additional increment of disability of the other condition which is proximately due to or the result of a service-connected disorder). Allen v. Brown, 7 Vet. App. 439 (1995). Aggravation will be established by determining the baseline level of severity of the non-service-connected condition and deducting that baseline level, as well as any increase due to the natural progress of the disease, from the current level. 38 C.F.R. § 3.310(b)(2015).

The Veteran has current diagnoses of right knee and low back arthritis, and he is service connected for a left knee disability. As such, the only issues for resolution are whether the left knee disability either caused or aggravated the Veteran's right knee or back disabilities. 

The Veteran and his representative have argued that the Veteran's left knee disability caused his right knee and low back disability. For example, in his April 2006 claim, the Veteran asserted that because he favored his left knee, he put more pressure on his right knee and had been experiencing back problems because of it. In his January 2008 notice of disagreement, the Veteran suggested that his right knee disability was the result of favoring the left knee causing him to put additional strain on his right knee. He added that he had injured his back because of a fall that was caused by his left knee. In his October 2008 substantive appeal, the Veteran stated that he did not have right knee problems until his left knee worsened.

In a brief in 2016, the Veteran's representative wrote that the 2015 VA examination provides medical evidence of instability, and functional loss due to pain with motion in the left knee, and that medical records provide evidence that the Veteran has had substantial problems with his right knee since his discharge from service. The representative emphasized that it was the Veteran's belief that the stress that his right knee has had to bear through the years has contributed to the development of his current right knee disability and his lower back condition. 

The representative cited a report from the University of Maryland Medical Center suggesting that walking abnormalities are unusual and uncontrollable, due to the tendency of the body to protect a painful bone or joint. (Walking abnormalities, (2015) University of Maryland Medical Center). The representative also suggested that medical literature provides that an individual with a painful lower extremity attempts to take less weight on the affected limb. Weight bearing on the normal side tends to be prolonged, and produces a characteristic gait with uneven strides of different duration; citing Detrembleu C, Van den Heck A, Dierck F. Motion of the Body Centre of Gravity as a Summary Indicator of the Mechanics of Human Pathological Gait. Gait and Posture Twelve, 2000 243-50. The representative concluded that the disturbance in the Veteran's gait has resulted in multiple falls and caused his current lumbar spine and right knee disability.

The Court has held that a medical article or treatise "can provide important support when combined with an opinion of a medical professional" if it discusses generic relationships with a degree of certainty such that, under the facts of a specific case, there is at least "plausible causality" based upon objective facts rather than on an unsubstantiated lay medical opinion. Mattern v. West, 12 Vet. App. 222, 228 (1999). In the present case, the treatise evidence submitted by the Veteran is not accompanied by the opinion of any medical expert. The Board concludes that this information is insufficient to establish the required medical nexus opinion. To this end, there is simply no medical support for the contention that the Veteran's left knee caused either his right knee or back disabilities. The Veteran was provided with a VA examination in 2015 to address this specific question, and no competent evidence undermines this conclusion. Of note, the examiner was clearly familiar with the Veteran's contentions, when providing the opinion, and is presumably aware with the discussion in the medical community as to whether an altered causes disabilities to develop in other joints. Such knowledge of medical literature would be required for an examiner to be considered qualified to render an opinion, and there is no allegation that the examiner was not qualified. As such, the representative's argument does not mandate a remand for an additional opinion.

Several opinions have been obtained in this case to address the etiology of the Veteran's right knee and back disabilities.

In July 2006, a VA examiner opined that the Veteran's current right knee and back conditions were not secondary to his service connected left knee condition. The examiner explained that the Veteran had no objective evidence of any pathology involving his right knee or lower back except, the subjective complaints, and added that so far as his left knee was concerned, at the present time there was no instability or arthritis present.

In 2012, a VA examiner concluded that it was less likely than not that the left knee caused a right knee disability or back disability. However, the examiner provided an insufficient rationale for the opinions that were provided. For this reason, the Board remanded the Veteran's claim to obtain an additional opinion.
 
After examination of the Veteran and consideration of his medical history, a VA examiner opined in March 2015 that the Veteran's right knee and low back disabilities were neither caused, nor aggravated, by his left knee disability. She explained that she had considered the Veteran's report of favoring the service connected left knee and putting more weight on his right knee. However, she postulated that if the service connected left knee disability were the cause of the right knee arthritis, the service connected left knee disability would be expected to be much more significant at this time. However, the MRI of the left knee dated in February 2006 showed no significant meniscal and/or ligamentous pathology, and the arthritis in both knees was very early, and minimal to at most, mild. As such, the examiner concluded that the degenerative changes that the Veteran exhibits in his right knee and in his LS spine were more likely than not related to normal, wear and tear type aging changes and obesity.

This opinion has not been undermined or controverted by any competent medical evidence, and has been found to be highly probative as it was provided by a medical professional, grounded in the facts of the Veteran's case. As such, it is afforded great weight.

With regard to the Veteran's claimed disabilities, the Board finds that the most probative evidence of record to be the March 2015 examiner's opinion asserting that the Veteran's right knee and back disabilities was not caused or aggravated by his service-connected disabilities. The Board also takes note of the lay statements from the Veteran, his wife and his representative, asserting a nexus between his current right knee and back disabilities and his service connected left knee disability. However, lay testimony not considered competent (meaning provided by medically qualified or trained individuals) to provide a medical conclusion as to a relationship between his in-service injury and his current arthritis. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). While lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issue in this case, arthritis falls outside the realm of common knowledge of a lay person. See Jandreau, supra (lay persons not competent to diagnose cancer). Arthritis is not the type of condition that is readily amenable to mere lay diagnosis or probative comment regarding its etiology, as the evidence shows that radiological studies, physical examinations, and other specific findings are needed to properly assess and diagnose the disorder. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). Therefore, the Veteran's lay statements have little probative value.

The Board notes that the Veteran has suggested that his back was injured as a result of a fall that was due to his left knee disability. However, the record does not appear to show treatment for a specific back injury, and no specific details on such an injury or when it occurred have been offered by the Veteran. As such, the Board does not find that such an allegation gives reason to question the well-reasoned and supported March 2015 VA examiner's opinion.

As described, the evidence is therefore against the existence of a nexus between the Veteran's service connected disabilities and his current right knee and back disabilities; therefore service connection for a right knee and back disability on a secondary basis is denied. 

Entitlement to an Evaluation in Excess of 10 Percent for Left Knee Disability

The Veteran was assigned a 10 percent rating for his left knee disability in March 1986 under Diagnostic Codes 5020-5003. He filed a claim for an increase in rating for his left knee in March 2006. 

Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R., Part 4. Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1. Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the appellant working or seeking work. 38 C.F.R. § 4.2. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7. 

The Veteran is currently in receipt of a 10 percent disability evaluation for nodular synovitis of the left knee. For the entire initial rating period on appeal, the Veteran's left knee disability has been evaluated under 38 C.F.R. § 4.71a, Diagnostic Code 5020-5003, which provides that arthritis is to be rated based on limitation of motion. With regard to the knee, limitation of motion is evaluated under Diagnostic Codes 5260 and 5261.

Additionally, the Board has considered the applicability of each of the Diagnostic Codes applicable to the knees to determine whether the Veteran is entitled to a greater or separate disability rating under any other Diagnostic Code. As will be discussed in greater detail below, there is no evidence of ankylosis, impairment of the tibia and fibula, or genu recurvatum. Thus, Diagnostic Codes 5256, 5262, and 5263 do not apply. 38 C.F.R. § 4.71a. There is no argument to the contrary.

With these Diagnostic Codes excluded, the Board will first address whether the Veteran is entitled to a greater rating based on the Diagnostic Codes applicable to limitation of motion of the left knee. Separate evaluations may be assigned for limitation of flexion and extension of the same joint. VAOPGCPREC 09-04 (September 17, 2004). Specifically, when a Veteran has both a compensable level of limitation of flexion and a compensable level of limitation of extension of the same leg, the limitations must be rated separately to adequately compensate for functional loss associated with injury to the leg. Id. 

Limitation of flexion to 60 degrees warrants a 0 percent rating. Flexion limited to 45 degrees warrants a 10 percent rating. Flexion limited to 30 degrees warrants a 20 percent rating. Flexion limited to 15 degrees warrants a 30 percent rating. 38 C.F.R. § 4.71a, Diagnostic Code 5260. 

Limitation of extension to 5 degrees warrants a 0 percent rating. Extension limited to 10 degrees warrants a 10 percent rating. Extension limited to 15 degrees warrants a 20 percent rating. Extension limited to 20 degrees warrants a 30 percent rating. Extension limited to 30 degrees warrants a 40 percent rating. Extension limited to 45 degrees warrants a 50 percent rating. 38 C.F.R. § 4.71a, Diagnostic Code 5261.

The normal range of motion of the knee is 0 degrees of extension and 140 degrees of flexion. 38 C.F.R. § 4.71, Plate II. 

In July 2006 the Veteran was afforded a VA examination for his service connected left knee condition. At that examination he reported that his left knee was painful sometimes, depending on the weather conditions, but he was not using a brace at that time. He noted that the pain was intermittent but sometimes lasted for prolonged periods. He sometimes took Motrin and the intensity of the pain was a reported 7 or 8 out of 10. His work was affected to the extent that he was unable to stand for long periods of time, and sometimes it felt like his knee was locking. There was no history of flare ups or any additional loss of motion, but repetitive motion increased his pain. He reported that the condition was slowly getting worse. Examination of the left knee revealed that alignment was normal. There was a noted surgical scar, but no effusion or swelling. The patellar position was normal and the translation was satisfactory; the range of motion was 0-130 degrees with complaint of pain at the end of motion. X-rays were normal. The examiner noted that the Veteran's left knee showed no sign of instability or arthritis. 

In March 2007 the Veteran was afforded a VA examination for his joints, including his left knee. At that examination he noted that his left knee was painful with an occasional tendency of giving out. He did not use a knee brace and repetitive motion was without any loss of motion. The Veteran noted that in 2005 he fell when his knee suddenly gave out. Subsequently he had a MRI followed by arthroscopic surgery in July 2006. The Veteran reported that there was still occasional instability of the left knee. Examination of the left knee revealed that alignment was normal and that there was no swelling. There was a surgical scar on the medial side of the knee, with healthy skin and no deformity. There was mild crepitation on movement with stable ligaments. The Veteran's range of motion measurements revealed 0-135 degree flexion with normal quadriceps power. There was no additional limitation of motion due to pain, weakness, fatigue or lack of endurance on repetitive use of the joints. The examiner noted that there was no impairment of daily occupational activities due to his left knee disability. Ligaments were stable. McMurray and drawer tests were negative and Lachman's test was negative. As such, the examiner found no evidence of any left knee instability.

The Veteran received continued treatment for bilateral knee pain at the Detroit VAMC and the Pontiac outpatient VA Center between 2009 and 2011. In September 2009 the Veteran's range of motion of his left knee flexion was 0-120 and he reported experiencing knee pain. 

In August 2012 the Veteran was afforded another VA examination after a July 2012 Board remand to assess the current severity of his left knee disability. At this examination the examiner noted the Veteran's prior diagnosis of left knee sprain and his reports of continued popping and pain. The Veteran did not report any flare ups, functional loss of functional impairment of the left knee and stability and muscle strength testing was normal. The Veteran did report pain on palpation of both knees and further reported the occasional use of a cane as an assistive device. The Veteran did not have any reported meniscal conditions of the left knee and his range of motion measurements of his flexion was to 120 degrees, and 125 degrees with pain, and extension to 0 degrees with no evidence of painful motion. The examiner noted that the Veteran's left knee disability did not affect his ability to work. 

The Board acknowledges that the August 2012 examiner erroneously noted that the Veteran had a total replacement of the left knee and did not take note of his prior arthroscopic procedure. However, ultimately the rating for the Veteran's left knee is based on current findings, and current impairment and not on the type of procedure the Veteran had undergone. Regardless, the Board remanded the claim for another medical opinion in October 2014. 

In March 2015, the Veteran was afforded a new VA examination for his left knee disability to assess the current severity. At that examination the Veteran reported that he was only able to flex his knees with pain, and it was because of this pain that he was not able to flex the whole way. It was noted that in 2014 the Veteran was issued a brace for the left knee and he claimed continues to "catch" and he may fall when it happens. He denied any flare-ups.
The Veteran was able to perform repetitive use testing of the left knee with at least three repetitions without any objective evidence of limitation by pain, weakness or fatigability. There was no ankylosis or instability of the knee, and the Veteran's range of motion measurements were within normal range at 140 and 0 degrees of flexion and extension, respectively. The examiner noted the Veteran's prior arthroscopy in addition to his occasional use of a cane and brace, but noted that the Veteran's left knee disability did not impact his ability to work. On examination of knee stability, there was no evidence of joint instability. Lachman, Posterior drawer tests were both normal and there was no medial or lateral instability detected.

The Board notes that a compensable rating under the Diagnostic Code applicable to impairment of flexion requires flexion limited to 45 degrees. The Veteran has never demonstrated flexion to 45 degrees or fewer, even when taking pain into consideration. At worst, the Veteran demonstrated flexion to 125 degrees at the time of his August 2012 examination. A compensable rating under Diagnostic Code 5260 is therefore not warranted. 38 C.F.R. § 4.71a, Diagnostic Code 5260.

With respect to whether the Veteran is warranted an increased rating under DC 5261, the Board notes that the Veteran consistently showed full extension to 0 degrees each time range of motion testing has been conducted. Therefore, as extension is not limited, a separate compensable rating under Diagnostic Code 5261 is not warranted. 

The Veteran has reported experiencing pain on range of motion testing at several of his examinations. However, even if range of motion was slightly limited by pain, pain alone is not sufficient to warrant a higher rating, as pain may cause a functional loss, but pain itself does not constitute functional loss. Mitchell v. Shinseki, 25 Vet. App. 32, 36-38 (2011) (emphasis added). Rather, pain must affect some aspect of "the normal working movements of the body" such as "excursion, strength, speed, coordination, and endurance," in order to constitute functional loss. Id. at 43; see 38 C.F.R. § 4.40. In this case, it does not. The pain may have prevented the Veteran from completing full range of motion, but it has not impaired his range of motion to such a degree that a compensable rating would be supported based on either flexion or extension. Rather, the Veteran demonstrated pain-free motion well-beyond the limitation required for a higher schedular rating. As such, there is not a basis for a compensable rating based solely on flexion or extension. 

VA treatment records were reviewed but did not show limitation of motion beyond that which was found at the VA examinations.

The Board has additionally considered functional loss due to functional limitation other than pain. 38 C.F.R. § 4.40 (2014); DeLuca v. Brown, 8 Vet. App. 202 (1995). Here, the VA examiners and private doctors, have noted the Veteran's complaints such as knee pain, and the Board has taken those complaints into consideration in its above discussion. The Board finds that the evidence does not support a finding that the Veteran's functional loss causes disability beyond the above-discussed range of motion testing. For example, the above medical evidence indicates that repetitive motion testing consistently failed to functionally limit the range of motion in the Veteran's left knee to a level commensurate with a higher rating. While the Board accepts the credible contentions of the Veteran that his left knee disability causes him to experience significant pain, the Board has taken that into account in its consideration of the range of motion of the Veteran's knee. As noted, the complaints of left knee pain, coupled with the limitation motion of the left knee, provided the basis for the compensable rating that has been assigned. See 38 C.F.R. § 4.59 (2015).

Turning next to a separate rating based on instability of the left knee and/or recurrent subluxation, VA's General Counsel has concluded that limitation of motion and instability of a knee may be rated separately; in other words, evaluation of knee dysfunction based on both limitation of motion and instability does not amount to pyramiding under 38 C.F.R. § 4.14. See VAOPGCPREC 23-97 (July 1, 1997) and VAOPGCPREC 09-98 (August 14, 1998). Therefore, limitation of motion and instability of the knee may be rated separately, provided that any separate rating must be based upon additional disability. Degmetich v. Brown, 104 F.3d 1328, 1331 (Fed. Cir. 1997).

Recurrent subluxation or lateral instability is rated at 10 percent when slight, 20 percent when moderate, and 30 percent when severe. 38 C.F.R. § 4.71a, Diagnostic Code 5257 (2014). The words "slight," "moderate," and "severe" are not defined in the VA Schedule for Rating Disabilities. A clinicians' use of terms such as "moderate" and "severe," although an element that the Board will consider, is not dispositive of the issue. Rather than applying a mechanical formula, the Board must evaluate all of the evidence in order to ensure that its decisions are equitable and just. 38 C.F.R. § 4.6. 

The Board notes that in this case, stability testing from throughout the course of the Veteran's appeal has failed to show any left knee instability. For example, at the 2015 examination, the anterior and posterior cruciate ligaments stability tests were normal, as were the medial and lateral collateral ligament stability test. Additionally, the medial and lateral meniscus tests were within normal limits. 

The findings at the 2015 examination were consistent with the findings at the previous examinations. The Board acknowledges the fact that the Veteran has reported experiencing instability and does wear a brace, but the objective clinical evidence does not support the finding of instability.

With respect to Diagnostic Code 5010, the Board notes that the Veteran is already in receipt of a 10 percent evaluation because he has degenerative arthritis in his left knee. In order to warrant a 20 percent disability rating under the applicable code for arthritis, the Veteran would have to have arthritis of 2 or more major joint groups or minor joint groups with occasional incapacitating episodes. This 20 percent rating cannot be assigned in addition to the 10 percent rating under Diagnostic Code 5010, because that would result in unlawful pyramiding. 

When the semilunar cartilage (that is, the meniscus) is dislocated with frequent episodes of locking, pain and effusion into the joint a 20 percent rating is assigned. 38 C.F.R. § 4.71a, Diagnostic Code 5258. Under Diagnostic Code 5259, removal of the semilunar cartilage that remains symptomatic is assigned a 10 percent rating. 
In this case, the Board notes that the Veteran has not reported any prior meniscal problems or procedures; therefore, Diagnostic Codes 5258 and 5259 are not for application. 

The Board takes note of the Veteran's statements that his left knee pain has worsened. And as a lay person, the Veteran is considered to be competent to report what comes to him through his senses, such as knee pain or other symptoms associated with arthritis. Layno v. Brown, 6 Vet. App. 465 (1994). However, he is not competent to identify a specific level of disability of his disease according to the appropriate diagnostic codes. On the other hand, such competent evidence concerning the nature and extent of the Veteran's disability has been provided by the medical personnel who have examined him during the current appeal and who have rendered pertinent opinions in conjunction with the evaluations. The medical findings (as provided in the numerous examination reports and clinical records) directly address the criteria under which this disability is evaluated. Here, the clinical evidence pertaining to the Veteran's left knee disability is more probative for the purposes of assigning a rating in conjunction with the relevant schedular rating criteria and the Board finds that the symptoms reported have been appropriately considered in the currently assigned noncompensable rating in effect during the appeal period. 

Accordingly, the Veteran's claims for an increased rating for his left knee disability is denied. 

Extraschedular Considerations

The Board has considered whether referral for an extraschedular evaluation is warranted for the disabilities on appeal. In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321 (2015). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Therefore, initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Thun v. Peake, 22 Vet. App. 111 (2008).

Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. In the second step of the inquiry, however, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). When the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for completion of the third step-a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extraschedular rating. Id. 

Turning to the first step of the extraschedular analysis, the Board finds that the symptomatology and impairment caused by the Veteran's left knee disability is specifically contemplated by the schedular rating criteria, and no referral for extraschedular consideration is required. The schedular rating criteria, specifically cover the Veteran's main reported symptoms which include limitation of motion and instability. See 38 C.F.R. § 4.71a, 4.124a. The Veteran has also complained about left knee pain, and while pain is not specifically contemplated in the schedular rating criteria, the Board is required to consider all of the Veteran's symptoms in determining whether the range of motion in his left knee was functionally limited. That is the Board must consider factors such as pain, weakness, stiffness, fatigability, and lack of endurance. As such, the Board is essentially tasked with considering of all of the Veteran's left knee related symptoms within the parameters of the schedular rating that is assigned. 

For these reasons, the Board finds that the schedular rating criteria are adequate to rate the left knee disability with pain and limitation of motion and referral for considerations of an extraschedular evaluation are not warranted. 

Moreover, because the assigned Diagnostic Code requires the Board to consider all of the Veteran's symptoms in determining whether the range of motion is functionally limited, the Board is essentially tasked with considering of all of the Veteran's knee related symptoms within the parameters of the schedular rating that is assigned. 

The Board acknowledges the fact that the Veteran wears a knee brace and uses a cane. However, the use of these assistive devices does not render the Veteran's service connected knee disability unique or unusual, and they do not mean that the schedular rating criteria do not adequately describe the symptoms of the Veteran's service connected disabilities, so as to trigger referral for extraschedular consideration. 

First, the use of an assistive device is not unexpected when a person experiences significant pain in the knee. That is, it is not a unique or unusual result of lower extremity disabilities. Second, the use of an assistive device or cane is not a "symptom" of the Veteran's disability; rather, it is the result of knee symptoms such as pain, tenderness and limitation of motion. In other words, the Veteran uses a cane because of pain in his knees, but pain is a symptom that is specifically contemplated by the schedular rating criteria. Instability was also evaluated with regard to the Veteran's left knee. The same is true with limitations as to walking, sitting, or standing. The Veteran has noted that he has difficulty walking because of an increase in pain. Here, there are higher schedular ratings that take into account increased pain. 

The Board has also considered whether an inferred claim for a total disability rating based on individual unemployability (TDIU) under Rice v. Shinseki, 22 Vet. App. 447 (2009) has been raised. However, the Veteran has not alleged that he is precluded from obtaining substantially gainful employment solely on account of his service connected left knee disability on appeal. Thus, the Board finds that Rice is inapplicable. 


ORDER

Service connection for a right knee disorder, claimed as secondary to service-connected left knee localized nodular synovitis is denied. 

Service connection for a low back disorder, claimed as secondary to service-connected left knee localized nodular synovitis is denied. 

A rating in excess of 10 percent for left knee localized nodular synovitis is denied. 


____________________________________________
MATTHEW W. BLACKWELDER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs